UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

JEFFREY ROBINSON and                                  CIV. NO. 13-1868 (JNE/JSM)
DEBRA ROBINSON,

      Plaintiffs,

v.                                                    <u>REPORT AND RECOMMENDATION</u>

FEDERAL NATIONAL
MORTGAGE ASSOCIATION,

      Defendant.

      JANIE S. MAYERON, U.S. Magistrate Judge

This matter came before the undersigned on defendant Federal National Mortgage Association's Motion to Dismiss [Docket No. 15]. This matter has been referred to the undersigned Magistrate Judge for a Report and Recommendation by the District Court pursuant to 28 U.S.C. § 636(b)(1)(A),(B) and Local Rule 72.1(c). Pursuant to this Court's Order dated September 9, 2013 [Docket No. 22], this Report and Recommendation is being issued based on the parties' written submissions.

Plaintiffs seek to invalidate the foreclosure of the mortgage on their home. Plaintiffs assert three claims against defendant: (1) quiet-title, to determine adverse claims under Minn. Stat. § 559.01; (2) declaratory judgment; and (3) slander of title. For the reasons stated below, the Court recommends that defendant's Motion to Dismiss be granted and plaintiffs' claims be dismissed with prejudice.

## I.      BACKGROUND

### A.      Plaintiffs' Complaint

The facts bearing on this motion to dismiss are as follows:  On August 26, 2002, plaintiffs executed and delivered a note to Washington Mutual Bank, FA ("WAMU") on property located in Ramsey, Plymouth, Minnesota ("Property").  See Complaint [Docket No. 1], ¶¶ 1, 4.  On the same day, plaintiffs executed a Mortgage in favor WAMU.  Id., ¶ 4, Ex. 1 (Mortgage).  The Mortgage lists the Mortgage Electronic Registration Systems, Inc. ("MERS") as the mortgagee and WAMU as the lender.  Id., Ex.1.  The Mortgage was recorded with the Hennepin County Recorder on September 30, 2002.  Id.

On May 12, 2008, Usset Weingarden & Liebo ("Usset") drafted an Assignment of Mortgage from MERS to WAMU.  Id., ¶ 27, Ex. 10 (Assignment of Mortgage).  Rick Wilken, as the Vice President at MERS, executed the Assignment of Mortgage and it was recorded with the Hennepin County Recorder on May 21, 2008.  Id.  Plaintiffs claimed that Wilken was not a Vice President of MERS at the time he executed the Assignment of Mortgage because he worked for Lender Processing Services ("LPS") and there is no record of Wilken's authority to sign documents on behalf of MERS.  Id., ¶¶ 28, 39 Ex. 11 (internet printout on Wilken as of February 9, 2013 from www.zoominfo.com).  In addition, plaintiffs attached to their Complaint a forensic examination of assignment of mortgages of Chase, Wells Fargo and Bank of America prepared by McDonnell Property Analytics, Inc. in 2010 for the Register of Deeds for the Essex Southern District Registry of Deeds.  Id., ¶ 45, Exs. 20 (McDonnell Property Analytics Forensic Examination), 21 (Affidavit of John L. Obrien, Register of Deeds Southern Essex District).  According to plaintiffs, Wilken was listed in the report, along

with numerous others, as an "alleged robo or surrogate signer," whose task it was to sign documents affecting title without reading the documents or verifying the facts in the documents, and who "regularly" failed to establish that they had the authority to execute the documents on whose behalf they purport to act. Id., ¶¶ 45, 46, Exs. 20, 21.

On September 25, 2008, the United States seized WAMU, placed it into receivership with the Federal Deposit Insurance Corporation ("FDIC"), and JPMorgan Chase ("Chase") acquired the bulk of WAMU's assets from the FDIC. Id., ¶ 18, Exs. 6 (Failed Bank Information Summary), 7 (September 26, 2008 Wall Street Journal article), 8 (Affidavit of FDIC-R in Support of Summary Judgment submitted in Hayes v. J.P. Morgan Chase Bank, et al., 09-cv-3015 (JNE/JJG) (D. Minn. Apr. 15, 2010)), 9 (Purchase and Assumption Agreement ("PAA") among FDIC as Receiver of WAMU and Chase). Plaintiffs alleged that the PAA is silent as to whether Chase acquired WAMU's interest in the Property. Id., ¶¶ 19, 21. Plaintiffs further alleged that if Chase purchased plaintiffs' loan, assignments from WAMU to the FDIC and from the FDIC to Chase, along with the powers of attorney to execute these documents, were required. Id., ¶ 22. No such documents were recorded as to the subject Property. Id.

On August 17, 2010, Usset noticed a mortgage foreclosure sale. Id., ¶ 29. On October 20, 2010, plaintiffs signed a Corrective Mortgage that listed MERS as the mortgagee and WAMU as the lender, despite the fact that MERS assigned its interest in the Mortgage years earlier and that WAMU ceased to exist in 2008. Id., ¶ 43, Ex. 19 (October 20, 2010 Corrective Mortgage). The correction to the original mortgage

related to the legal description of the Property. Id., Ex. 19.[1]  On October 26, 2010, the Corrective Mortgage was filed with the Hennepin County Recorder. Id.

On November 5, 2010, Usset, acting as the attorney-in-fact for Chase, signed a Notice of Pendency of Proceeding and Power of Attorney to Foreclose Mortgage, which was recorded with the Hennepin County Recorder on November 10, 2010.[2] Id., ¶ 29, Ex. 12 (November 5, 2010 Notice of Pendency of Proceeding and Power of Attorney). This document stated that the mortgagee was MERS and the Assignment of Mortgage had been assigned to Chase, as the successor-in-interest to WAMU. Id., Ex. 12. Plaintiffs claimed that there is no recorded power of attorney authorizing Usset to act on behalf of Chase as it relates to the Property. Id., ¶ 30.

On June 14, 2011, Usset appeared on Chase's behalf at the sheriff's sale, and exercised the power of sale clause by bidding the debt owed to Chase. Id., ¶ 31.  On June 15, 2011, the Sheriff's Certificate of Sale and the foreclosure record were recorded with the Hennepin County Recorder.  Id., Ex. 13 (Sheriff's Certificate of Sale and Foreclosure Record).

---

[1]     Previously, on April 29, 2008, plaintiffs signed a corrective mortgage that listed MERS as the mortgagee and WAMU as the lender.  Affidavit of Sharon R. Markowitz ("Markowitz Aff."), Exhibit A [Docket No. 20-2], pp. 80-86.  It too was designed to correct the legal description of the original mortgage.  This corrective mortgage appears identical to the October 2010 Corrective Mortgage except that the latter document added a sentence to the legal description.

[2]     On November 5, 2010, Usset prepared a Notice of Mortgage Foreclosure Sale, which was to have taken place on January 14, 2011.  The foreclosure sale was postponed by agreement of plaintiffs.  The Notice of Mortgage Foreclosure Sale and Affidavit of Postponement were recorded on December 28, 2010.  Complaint, Ex. 13 (Sheriff's Certificate of Sale and Foreclosure Record).

On June 10, 2013, Chase quit claimed its interest in the Property to Fannie Mae. Id., ¶ 33, Ex. 14 (June 10, 2013 Quit Claim Deed).  Plaintiffs alleged that this quit claim deed was void since Chase had no interest to quit claim.  Id., ¶ 44.

Plaintiffs alleged that Fannie Mae acquired its interest in the Mortgage close in time to its origination, as evidenced by a MERS look-up sheet that lists Fannie Mae as an investor, Fannie Mae's Custodial Agreement and Fannie Mae's Seller/Servicer Guides, and therefore, Chase conducted an invalid foreclosure on behalf of Fannie Mae.  Id., ¶¶ 8, 9, 16, 17, Exs. 2 (screen shot dated June 25, 2013, listing the name "Robinson," Chase as the "Servicer," and Fannie Mae as the "Investor"),[3] Ex. 4. (form Custodial Agreement), Ex. 5 (October 30, 2009 Seller/Servicer Guide).

According to plaintiffs, Fannie Mae is a government-sponsored enterprise that purchases mortgages on the secondary market, pools the mortgages, and sells them as mortgage-backed securities to investors.  Id., ¶ 11.  Fannie Mae's Custodial Agreement requires that the lender deliver to the custodian a completed and executed assignment to Fannie Mae of the mortgage in a recordable but not recorded format, and an executed power of attorney to Fannie Mae to assign the mortgage.  Id., ¶ 12, Ex. 4 (form Custodial Agreement).

Plaintiffs asserted that Fannie Mae's Seller/Servicer Guides require that when a servicer assigns a MERS-registered loan to Fannie Mae, the servicer must execute an assignment of the mortgage to Fannie Mae.  Id., ¶¶ 14, 15, Ex. 5 (October 30, 2009 Seller/Servicer Guide).

---

[3]    Plaintiffs described this document as a "MERS lookup for the subject property." Complaint, ¶ 8.

Plaintiffs claimed that on or about April 13, 2011, Chase entered into a Consent Order with the Officer of Comptroller of the Currency ("OCC") in which Chase admitted that it had engaged in a variety of "unsafe and unsound" banking practices in conducting foreclosures.  Id., ¶¶ 36, 37, Ex. 15 (Chase Consent Order).

Plaintiffs also alleged that the OCC obtained a Consent Order against LPS on April 13, 2011, for deficient practices in mortgage loan servicing and foreclosure processing.  Id., ¶ 39, Ex. 17 (LPS Consent Order).  Pursuant to this Order, LPS agreed that its employees had executed assignments of mortgage and other mortgage-related documents without the authority to execute the mortgage documents on behalf of servicers.  Id., ¶ 39, Ex. 17 (LPS Consent Order).

Plaintiffs alleged that MERS, WAMU and Chase at all times knew, or had reason to know, that the May 12, 2008 Assignment of Mortgage, the November 5, 2010 Notice of Pendency of Proceeding and Power of Attorney, and the June 10, 2013 Quit Claim Deed were all void.  Id., ¶ 47.

Based on the unrecorded assignment of the Mortgage from MERS to Fannie Mae in violation of Minn. Stat. § 580.02, the invalid May 12, 2008 Assignment of Mortgage from MERS to Chase, the missing power of attorney from Chase to Usset in violation of Minn. Stat. § 580.05, and the void quit claim deed, plaintiffs maintained they are the owners of the Property, the Sheriff's Certificate is void, and the foreclosure sale is void.  Id., ¶¶ 31, 32, 34, 35, 41, 48.

Plaintiffs asserted the following causes of action:

In Count I, Determination of Adverse Claims, Minn. Stat. § 559.01, plaintiffs plead a quiet title action seeking a determination regarding Fannie Mae's adverse interests in

the Property.  Id., ¶¶ 50-56.  According to plaintiffs, in a quiet title action, the burden of proof is on Fannie Mae, the mortgagee asserting an adverse interest in the property, to prove its title to the Mortgage by preponderance of the evidence.  Id., ¶¶ 53, 54.  Fannie Mae's claim to an interest in the Property is void because there is an unrecorded assignment of the mortgage from MERS to Fannie Mae; there are no of recorded assignments of mortgages and powers of attorney from WAMU to the FDIC and from the FDIC to Chase, in violation of Minn. Stat. §§ 580.02 and 580.05; the May 12, 2008 Assignment of Mortgage is invalid and corrupted the chain of title; the November 5, 2010 Notice of Pendency of Proceeding and Power of Attorney is void; there is no of record power of attorney from Chase to Usset, in violation of Minn. Stat. § 580.05; Chase did not possess the mortgagee's power of sale; and the June 10, 2013 quit claim deed is void because the chain of title had already been corrupted and because Chase had no interest to assign.  Id., ¶ 55.

In Count II, plaintiffs seek a declaratory judgment under Minn. Stat. § 555.02 that the Sheriff's Certificate of Sale, and the June 10, 2013 quit claim deed are all void; and that plaintiffs remain the owner of the Property in fee title.  Id., ¶¶ 57-59.

In Count III, alleging slander of title, plaintiffs asserted that where Chase drafted and recorded documents that were false, as Chase was not the real party in interest, and Chase had no authority to act on Fannie Mae's behalf, Fannie Mae knew or should have known that the documents were false, and its conduct amounted to a reckless disregard for the truth.  Id., ¶¶ 61-63.

As relief, plaintiffs sought: (1) a determination of adverse interest in the Property; (2) a declaration that the Sheriff's Certificate of Sale, the assignment of mortgage,

notice of pendency, power of attorney and quit claim deed are all void; (3) a declaration that plaintiffs remain the owner of the Property in fee title; and (4) money damages. Id., Prayer for Relief.

Fannie Mae moved to dismiss the Complaint, arguing that it was barred by the doctrines of issue and claim preclusion because plaintiffs had already had sued Fannie Mae, Chase and MERS in Jerde v. JP Morgan Chase, N.A., Civ. No. 11-2666 (PAM/JSM), 2012 WL 206271 (D. Minn. Jan. 24, 2012), aff'd, 502 Fed. Appx. 616 (8th Cir. 2013), plaintiffs had litigated the same claims and issues against all of these parties in this prior suit, and the suit had been dismissed with prejudice. Memorandum in Support of Defendant's Motion to Dismiss Complaint [Docket No. 18], pp. 5-8

In addition, Fannie Mae moved to dismiss the Complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, contending that plaintiffs' quiet title claim failed because the allegations are conclusory and without support of facts and the law. Id., pp. 8-10. Fannie Mae also asserted that the claim must be dismissed where plaintiffs had defaulted on the note, they had unclean hands, and consequently, they were not entitled the equitable relief afforded by the claim. Id., p. 10. As for the slander of title claim, Fannie Mae submitted that it must be dismissed because plaintiffs had not stated any facts to support the elements of the claim, much less to the level of particularity required by Rule 9(b). Id., pp. 11-12. Finally, because plaintiffs' substantive claims failed, their declaratory judgment action must also be dismissed. Id., p. 12.

For the reasons set forth below, the Court concludes that plaintiffs fail to state a claim for relief and therefore, Fannie Mae's motion to dismiss should be granted.[4]

## II.     STANDARD OF REVIEW

In considering a motion to dismiss under Rule 12(b)(6), the pleadings are construed in the light most favorable to the non-moving party, and the facts alleged in the complaints must be taken as true.  Ashley County, Ark. v. Pfizer, Inc., 552 F.3d 659, 665 (8th Cir. 2009).  In addition, a court must afford the plaintiff all reasonable inferences from those allegations.  Blankenship v. USA Truck, Inc., 601 F.3d 852, 853 (8th Cir. 2010).  At the same time, to withstand a motion to dismiss under Rule 12(b)(6), litigants must properly plead their claims under Rule 8 of the Federal Rules of Civil Procedure and meet the principles articulated by the United States Supreme Court in Ashcroft v. Iqbal, 556 U.S. 662 (2009) and Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007).

Under Rule 8(a)(2), a pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief."  The pleading standard articulated by

---

[4]      As this Court has determined that plaintiffs' underlying claims fail on the merits, it need not decide whether their claims are barred by issue and claim preclusion.  See Simmer v. HSBC Bank USA, N.A., Civ. No. 13-1549 (DSD/AJB), 2013 WL 6244710, at *5 (D. Minn. Dec. 3, 2013) (declining to reach a determination on res judicata or estoppel because the underlying claims fail on the merits); Schumacher v. Federal Home Loan Mortg. Corp., Civ. No. 13-29 (DSD/FLN), 2013 WL 3033746, at *2 (D. Minn. June 17, 2013) (stating "defendants argue that this action is barred by res judicata. . .and that this lawsuit is nothing more than a brazen attempt to relitigate Schumacher's claim.  The court need not reach the res judicata determination, however, as the underlying claims. . .fail on the merits.).  However, as other courts determined on facts and arguments virtually identical to those presented in the instant case, there is no question that plaintiffs' suit is barred based on the preclusion doctrines of collateral estoppel and res judicata.  See Welk v. Federal Nat'l Mortg. Ass'n, Civ. No. 12-2864 (SRN/TNL), 2013 WL 2155463, at *4-5 (D. Minn. May 17, 2013); Butler v. Fed. Nat'l Mortg. Ass'n, Civ. No. 12-2697 (SRN/TNL), 2013 WL 2145701, at *6 (D. Minn. May 15, 2013).

Rule 8 "does not require detailed factual allegations, but it [does demand] more than a unadorned, the-defendant-unlawfully-harmed-me-accusation." Iqbal, 556 U.S. at 678 (internal quotation marks and citations omitted). A "pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" Id. (quoting Twombly, 550 U.S. at 555). Thus, to "survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Id. (quoting Twombly, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. at 677 (quoting Twombly, 550 U.S. at 556). "[T]he plausibility standard, which requires a federal court complaint to 'state a claim for relief that is plausible on its face, . . . asks for more than a sheer possibility that a defendant has acted unlawfully." Ritchie v. St. Louis Jewish Light, 630 F.3d 713, 717 (8th Cir. 2011) (internal quotation and citation omitted). "Determining whether a complaint states a plausible claim for relief will, . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Iqbal, 556 U.S. at 679.

As a general rule, the Court may not consider materials "outside the pleadings" on a motion to dismiss, without converting the motion to dismiss to a motion for summary judgment. Fed. R. Civ. P. 12(d). "The court, however, 'may consider some materials that are part of the public record or do not contradict the complaint, as well as materials that are necessarily embraced by the pleadings,'" without converting the motion into one for summary judgment. See Little Gem Life Sciences, LLC v. Orphan Medical, Inc., 537 F.3d 913, 916 (8th Cir. 2008) (quoting Porous Media Corp. v. Pall

Corp., 186 F.3d 1077, 1079 (8th Cir. 1999) (internal citation and punctuation omitted).);

see also Fed. R. Civ. P. 10(c) ("A copy of a written instrument that is an exhibit to a

pleading is a part of the pleading for all purposes."); Mattes v. ABC Plastics, Inc., 323

F.3d 695, 697 n.4 (8th Cir. 2003).

With these standards in mind, the Court turns to the defendant's motion to

dismiss.

## III.   DISCUSSION

### A.   Quiet Title

In Minnesota, "[a]ny person in possession of real property personally . . . may

bring an action against another who claims an estate or interest therein, or a lien

thereon, adverse to the person bringing the action, for the purpose of determining such

adverse claim and the rights of the parties, respectively."  Minn. Stat. § 559.01.

In their response to Fannie Mae's motion to dismiss the quiet title claim, plaintiffs

first contended that as their suit originated in state court, this claim could not be judged

under federal pleading standards; rather, all they had to plead under Minnesota law was

that they were in possession of the Property and Chase had a claim adverse to them.

Memorandum in Opposition to Motion to Dismiss [Docket No. 23] ("Pl.'s Mem."), pp. 16-

18. Further, plaintiffs maintained that the Federal Rules of Civil Procedure did not alter

the burden of proof of a state law claim.  Id., p. 18.  Consequently, the Court could not

apply Rules 8 and 12(b)(6) to determine which party has the burden of proof – this is

substantive issue that has already been decided under state law.  Id., pp. 18-19.

This Court rejects plaintiffs' argument that the Court should apply the Minnesota

state court pleading standards to their quiet title claim.  Plaintiffs' counsel has made this

exact argument in the past and the Eighth Circuit could not have been more emphatic in its response: "[w]e apply federal pleading standards—Rules 8 and 12(b)(6)—to the state substantive law to determine if a complaint makes out a claim under state law." Karnatcheva v. JP Morgan Chase Bank, NA, 704 F.3d 545, 548 (8th Cir. 2013), cert. denied, 134 S.Ct. 72 (2013); see also Dunbar v. Wells Fargo Bank, N.A., 709 F.3d 1254, 1257 (8th Cir. 2013) (quoting Karnatcheva); Novak v. JP Morgan Chase Bank, 518 F. App'x 498, 501 (8th Cir. 2013) (quoting Karnatcheva)); Gharwal v. Federal Nat'l Mortg. Ass'n, Civ. No. 13-685 (PJS/JSM), 2013 WL 4838904, at *2 (D. Minn. Sept. 11, 2013) (noting that the Eighth Circuit has "squarely and repeatedly rejected" this argument).

In addition, the Eighth Circuit in Karnatcheva rejected the "burden of proof" argument in a quiet title action advocated by plaintiffs.  As the court explained in Gharwal:

> Karnatcheva rejected that [burden of proof] argument, specifically holding that § 559.01 and the other authority on which [plaintiff] relies 'are not state substantive standards that govern the success of a quiet title claim.  Karnatcheva, 704 F.3d at 548.  Whether or not the Eighth Circuit's holding was "error" is not for this Court to decide; Karnatcheva is binding precedent, and this Court must apply it.  The Court notes, however, that although he was addressing a different issue, plaintiff's counsel himself[5] has conceded in the past "that, under Fed. R. Civ. P. 11, a quiet-title claim must be supported by an objectively reasonable basis for believing that the defendant's asserted interest in the property is invalid."  Welk v GMAC Mortg., LLC, 850 F.Supp.2d 976, 988 (D. Minn. 2012), aff'd, 720 F.3d 736 (8th Cir. 2013).  Here, plaintiffs quiet title claims are based only on

---

[5]   Both Gharwal and Karnatcheva were represented by William Butler, plaintiff's counsel in the instant case.

> conclusory statements and speculation, but no facts.  The
> claim fails under Rule 12(b)(6).

2013 WL 4838904, at *3.

Thus, this Court has reviewed plaintiffs' quiet title claim applying the standard governing Rules 8 and 12(b)(6) of the Federal Rules of Civil Procedure.

The "gist" of plaintiffs' quiet title claim is that MERS had assigned their Mortgage to Fannie Mae long before the foreclosure sale, the Assignment of Mortgage from MERS to WAMU in May 2008 was void because the Mortgage had already been assigned to Fannie Mae, and therefore, Chase (as the successor in interest to WAMU), was not the real party in interest with the power of sale at the time of foreclosure.  This theory fails for a multitude of reasons.

First, mere allegations of plaintiffs' possession of the property and conclusory statements that the defendant's adverse claims are invalid are insufficient to state a claim for relief.  See Karnatcheva, 704 F.3d at 548 (affirming the district court's dismissal of the plaintiff's quiet-title claim "because the plaintiff's pleadings, on their face, have not provided anything to support their claim that the defendants' adverse claims are invalid, other than labels and conclusions, based on speculation that transfers affecting payees and assignments of the notes were invalid."); Yang Mee Thao-Xiong v. American Mortg. Corp., Civil No. 13-354 (MJD/TNL), 2013 WL 3788799, at *4 (D. Minn. July 18, 2013) (quoting Novak v. JP Morgan Chase Bank, N.A., Civ. No. 12-589 (DSD/LIB), 2012 WL 3638513, at *4 (D. Minn. Aug. 23, 2012), aff'd, 518 F. App'x 498 (8th Cir. 2013)) (finding that plaintiffs "'must state facts sufficient to allow the court to draw the reasonable inference that . . . she is in possession and that a defendant claims a right or title to the property, but has no such right or title.'").

In the instant case, plaintiffs made wholly unsupported statements about Fannie Mae acquiring its interest in the mortgage shortly after it was originated and long before the commencement of the foreclosure, an unrecorded assignment from MERS to Fannie Mae prior to the foreclosure, the alleged lack of legal authority by individuals signing the assignment and foreclosure documents, and an unrecorded power of attorney authorizing Chase to foreclose on the Property.  See Complaint, ¶¶ 8, 9, 13, 16, 17, 22, 27, 28, 30-32, 34, 35, 39, 41, 42, 44, 48, 55, 61.  The Eighth Circuit and the courts in this District have unequivocally held that conclusory allegations lacking in factual support are insufficient to satisfy the Rule 8 pleading standards or the standards articulated in Iqbal and Twombly.  See Karnatvcheva, 704 F.3d at 548; Blaylock v. Wells Fargo Bank, N.A., 502 Fed. Appx. 623, 2013 WL 1688894, at *1 (8th Cir. April 19, 2013) (based on Karnatcheva, dismissed quiet title claim for falling short of federal pleading requirements); Iverson v. Wells Fargo Bank, N.A., 2013 WL 1688903 (8th Cir. April 19, 2013) (unpublished) (same); Sorem v. Bank of New York Mellon, Civ. No. 13-290 (DWF/JSM), 2013 WL 4611115, at *2-3 (D. Minn. Aug. 29, 2013); Ko v. Mortgage Elec. Registration Sys., Civ. No. 13-596 (JRT/AJB), 2013 WL 4052680, at *2 (D. Minn. Aug. 9, 2013); Quale v. Aurora Loan Services, LLC, Civ. No. 13-621 (JNE/AJB), 2013 WL 3166584, at *1 (D. Minn. June 20, 2013) (string citation omitted); Lara v. Federal Nat'l Mortg. Ass'n, Civ. No. 13-676 (SRN/AJB), 2013 WL 3088728, at *3 (D. Minn. June 18, 2013); Schumacher v. Federal Home Loan Mortg. Corp., Civil No. 13-29 (DSD/FLN), 2013 WL 3033746, at *2 (D. Minn. June 17, 2013).

Contrary to plaintiffs' conclusory allegations, the documents referenced in and attached to the Complaint show an unbroken chain of title from MERS to WAMU and

from WAMU to Chase (pre-foreclosure) and from Chase to Fannie Mae (post-foreclosure).  The Sheriff's Certificate of Sale is <u>prima</u> <u>facie</u> evidence that Chase (the foreclosing entity) complied with all legal requirements regarding the foreclosure and that the foreclosure and sale were proper.  Minn. Stat. § 580.19.  Plaintiffs recited no facts in their Complaint to rebut this evidence, and none of the documents attached to their Complaint support a claim that there was an unrecorded assignment between MERS and Fannie Mae prior to the foreclosure sale.

For example, the MERS "lookup" that plaintiffs describe as showing that Fannie Mae was "the investor" which owned the Mortgage before the foreclosure, is a document printed on June 25, 2013, over five years after the foreclosure sale, and after the June 10, 2013 quit claim deed from Chase to Fannie Mae.  This report does not remotely support plaintiffs' theory that there was an unrecorded assignment of the Mortgage from MERS to Fannie Mae <u>before</u> the foreclosure.  All the document reflects is that as of June 25, 2013, Fannie Mae had acquired its interest in the Property, which was <u>after</u> the foreclosure sale and is entirely consistent with the June 10, 2013 quit claim deed from Chase to Fannie Mae.  <u>See</u> <u>Welk</u>, 2013 WL 2155463, at *3 (rejecting the same "evidence"—consisting of a screen shot of the MERS loan information page— and noting "[i]t is no surprise that Fannie Mae is listed as having an interest in October 2012—Fannie Mae acquired an interest from Wells Fargo in March 2011.  There is no plausible allegation that Fannie Mae acquired any interest before 2011"); <u>Butler</u>, 2013 WL 2145701, at *3 (rejecting the same "evidence"–a screen shot from the MERS loan finder website showing Fannie Mae as the "investor" for the Mortgage, and stating "this screen shot is only evidence that, on October 3, 2012, Fannie Mae had an interest in

the Mortgage. It does not establish the allegations in the Complaint; rather, it is just the sort of 'shot in the dark' allegation that does not meet Rule 8's pleading standards. Thus, not only is there no factual support for plaintiffs' bald assertions, the record shows the exact opposite – the foreclosure and the subsequent quit claim deed were proper.").

Likewise, the language from the excerpts from the Fannie Mae Custodial Agreement or Servicer/Seller Guides, (Complaint, Exs. 4, 5), does not overcome the deficiencies in plaintiffs' Complaint, much less support a claim that there was an unrecorded assignment from MERS to Fannie Mae before the Assignment of the Mortgage in May 2008. The Custodial Agreement is an unexecuted form document that makes no reference to MERS, WAMU, Chase, plaintiffs, or to plaintiffs' Mortgage. See Complaint, Ex. 4 (form Custodial Agreement). The excerpt from the Seller Guide is dated October 30, 2009, which is after the 2008 Assignment of Mortgage from MERS to WAMU and the acquisition of the Mortgage by Chase. Id., Ex. 5. Accordingly, this Court has no basis for assuming that these documents apply to the Mortgage in this case.

Moreover, the language relied upon by plaintiffs from the Custodial Agreement does not provide a plausible inference that an assignment to Fannie Mae actually occurred prior to the foreclosure. The Agreement does not require an actual and present assignment from the servicer to Fannie Mae. It simply requires the servicer to prepare an assignment document that can be recorded when and if the mortgage is assigned to Fannie Mae.

Plaintiffs' reliance on the language in the Fannie Mae Seller Guide to suggest that the Mortgage must have been transferred to Fannie Mae before the foreclosure

sale, is equally meritless.  Plaintiffs' reasoning assumes that the mortgage in this case was delivered to Fannie Mae prior to the foreclosure, which of course, was not the case. In fact, plaintiffs' lawyer has made this exact claim before, quoting the exact same language from Fannie Mae's Seller Guide.  See Richter v. Federal Nat'l Mortg. Ass'n, Civ. No. 13-475 (ADM/JSM), Complaint, ¶18, Ex. 4 [Docket No. 1-2].  In that case, the district court dismissed the claim with prejudice, stating:

> plaintiffs make a cognitive leap between Integrity originating Plaintiff's loan and Integrity assigning an unrecorded interest in this loan to Fannie Mae.  Plaintiffs have pled no facts indicating this assignment.  Instead, Plaintiffs brush aside this critical gap in logic and focus on Fannie Mae's larger business practices.  Simply quoting a Fannie Mae policy document does not plausibly establish how Fannie Mae obtained an unrecorded interest in the Property in this case. Plaintiffs' allegations do not rise above speculation.

Richter v. Federal Nat'l Mortg. Ass'n, Civ. No. 13-475 (ADM/JSM), 2013 WL 3223377, at *3 (D. Minn. June 25, 2013) (internal citation omitted); see also Cheng Lee v. Federal Nat. Mortg. Ass'n, Civ. No. 13-180 (DWF/SER), 2013 WL 2631904, at *2 n.4 (D.  Minn. June 12, 2013) ("The only fact even arguably cited in support of the conclusion that there is an unrecorded assignment is that Fannie Mae's Seller/Servicer Guides require that an assignment of mortgage be executed in favor of Fannie Mae.  This conclusory allegation is insufficient.").

Further, plaintiffs' claim that Wilken, the individual who signed the Assignment of Mortgage for MERS, was a "robo or surrogate signer" for assignments recorded in another part of the country, does not create a "plausible inference" that Wilken did not have the legal authority on behalf of MERS to sign the May 12, 2008 Assignment of Mortgage or that he "robo-signed" the Assignment.

In sum, where the facts before the Court indicate that MERS received from plaintiffs a Mortgage that was recorded; MERS assigned the Mortgage to WAMU, which was recorded; Chase acquired WAMU's asserts from the FDIC; and there is no evidence of any further transfers of interests in the Property in the record until after the foreclosure sale, when Fannie Mae received a quit claim deed on the Property, it is implausible that Fannie Mae had received an assignment of the Mortgage before the foreclosure. See Welk, 2013 WL 2155463, at *3 ("As Fannie Mae points out, such an assignment would be illogical, because, if Wells Fargo had assigned Mr. Welk's mortgage to Fannie Mae before 2011, there would be no reason for Wells Fargo to deed the property to Fannie Mae in 2011.").

Second, even if the Custodial Agreement and the Seller/Servicer Guide governed plaintiffs' Mortgage, plaintiffs lack standing to challenge a failure of any assignment required by these documents.[6] See Segura v. Fed. Nat'l Mortg. Ass'n, Civ. No. 13-531 (SRN/JJK), 2013 WL 3034096, at *3 (D. Minn. June 17, 2013) ("Nor does the Seguras' reliance on the Seller/Servicer Guides or Fannie Mae's Custodial Agreement make their allegation less speculative. The Guide is, at best, a contract between Fannie Mae and its servicers. It is not for the benefit of the Seguras and imposes no duties on any entity vis-a-vis the borrower. The Custodial Agreement, too, is not for the benefit of any borrower, but is an agreement between Fannie Mae and unknown entities. Even if Wells Fargo was a party to either of these documents and breached its obligations under the documents, that failure would be for Fannie Mae, not the Seguras, to prosecute.");

---

[6]    Fannie Mae did not raise standing in its supporting brief.  Nevertheless, "[c]ourts are 'obligated to examine standing sua sponte where standing has erroneously been assumed. . . ." Meuir v. Greene County Jail Employees, 487 F.3d 1115, 1119 (8th Cir. 2007) (quoting Adarand Const., Inc. v. Mineta, 534 U.S. 103, 109 (2001)).

Welk, 2013 WL 2155463, at *3 ("[the] 'Guide' about which the Amended Complaint makes much hay is, at best, a contract between Fannie Mae and its servicers. It is not for the benefit of [plaintiff] and imposes no duties on any entity vis-a-vis the borrower. So even if Wells Fargo failed to comply with its purported obligations under the 'Guide,' such a failure would be for Fannie Mae, not [plaintiff], to prosecute."); Butler, 2013 WL 2145701, at *4 (finding that as plaintiff was not a third-party beneficiary of the Fannie Mae Seller/Servicer Guide, "the contract and its requirements are simply not relevant to any harm [he] may have suffered.  If BAC did not perform as promised under the contract, then Fannie Mae may bring a claim against BAC. BAC's alleged failure, however, is not [plaintiff's] to contest or remedy.") (citations omitted); Lara, 2013 WL 3088728, at *3 (finding that the Seller/Servicer Guide "is at best, a contract between Fannie Mae and its servicers. It is not for the benefit of Plaintiffs and imposes no duties on any entity vis-a-vis the borrower. The Custodial Agreement, too, is not for the benefit of any borrower, but is an agreement between Fannie Mae and unknown entities. Even if [WAMU or Chase] was a party to either of these documents and breached its obligations under the documents, that failure would be for Fannie Mae, not Plaintiffs, to prosecute.").

Similarly, even if plaintiffs' speculative statements regarding Wilken's signing authority are true, plaintiffs suffered no injury in fact as a result and therefore, lack standing to pursue those claims. See Altier v. Federal Nat'l Mortg. Ass'n, Civ. No. 1:13-164, 2013 WL 6388521, at *3 (N.D. Fla. Dec. 6, 2013) ("To the extent that Plaintiffs challenge the validity of the Assignment either because Plaintiffs allege MERS does not have the authority to assign the Mortgage—or because the Assignment was executed

by "robo-signers"—Plaintiffs do not have standing to raise a challenge to the validity of an assignment because Plaintiffs are not parties to the Assignment.") (citations omitted); Quale, 2013 WL 3166584, at *1 ("Insofar as the Quales based their claims on the allegations that an individual lacked authority to execute the assignment of mortgage, the Court rejects this argument because the Quales lack standing to make such a challenge, and even if they did have standing, their claims are fatally implausible and speculative.") (citations omitted); Forseth v. Bank of America, N.A., Civ. No. 13-38 (SRN/TNL), 2013 WL 2297036, at *5 (D. Minn. May 24, 2013) ("The allegations regarding unauthorized signatures on every document related to the foreclosure process for the Forseths' mortgage are similarly implausible and pure speculation.  But even if the signatures were unauthorized, the harm caused by the lack of signing authority is harm to MERS or BAC, in the case of Mr. Bruns, or BAC/Bank of America or Fannie Mae in the case of Mr. McDaniel and Ms. Girvan.  There is no allegation in the Amended Complaint that any of these individuals falsely initiated foreclosure proceedings against the Forseths' property, and the documents in the public records belie such a claim in any event. The Forseths defaulted on their mortgage by not making payments as they promised. Even if all three of these individuals lacked signing authority, as the Forseths claim, they have suffered no injury as a result and therefore have no standing to pursue their claims"); Kaylor v. Bank of America, N.A., Civ. No. 12-1586 (DSD/SER), 2012 WL 6217443, at *5 (D. Minn. Dec. 13, 2012) (finding that even if individual who effectuated the assignment of the mortgage did not have authority to do so, homeowners not a party to the mortgage assignment had no standing to challenge the assignment.); see also Sovis v. Bank of New York Mellon, Civ. No. 11-2253

(DWF/LIB), 2012 WL 733758, at *4-5 (D. Minn. Mar. 6, 2012) (finding that general allegations that defendants unlawfully foreclosed on plaintiff's home pursuant to a series of invalid assignments of mortgage, "cannot furnish the causal nexus necessary to establish standing to assert her claims."); Gerlich v. Countrywide Home Loans, Inc., Civ. No. 10-4520 (DWF/LIB), 2011 WL 3920235, at *2 (D. Minn. Sept. 7, 2011) (borrower lacks standing to challenge assignment of mortgage)); Kebasso v. BAC Home Loans Servicing, LP, 813 F. Supp.2d 1104, 1113 (D. Minn. 2011) (finding that mortgagors, lacked standing to challenge the defendants' authority to foreclose, as "'any disputes that arise between the mortgagee holding legal title and the assignee of the promissory note holding equitable title do not affect the status of the mortgagor for purposes of foreclosure by advertisement.' The court reaffirmed the principle that 'legal and equitable title can be separated' and if a dispute arises between the holder of legal and equitable title with respect to foreclosure, '[i]t is a matter between them alone, and does not concern the mortgagor,' and such a transaction does "not affect the interests of the mortgagor, and he could not object.'") (quoting Jackson v. Mortgage Elec. Registration Sys., Inc., 770 N.W.2d 487, 500 (Minn. 2009)).

Third, the Court rejects plaintiffs' contention that Chase did not have the power to foreclose because there was no the recorded assignment from the FDIC to Chase. See Pl.'s Mem., p. 22. The acquisition of WAMU's assets by Chase through the FDIC was documented by the PAA dated September 25, 2008. Complaint, Exs. 6 (Failed Bank Information Summary), 7 (September 26, 2008 Wall Street Journal Article), 8 (Affidavit of FDIC-R), 9 (September 25, 2008 Purchase Agreement). According to the PAA, Chase purchased from the FDIC "all of the assets (real, personal, and mixed, wherever

located and however acquired). . . ."  Id., Article 3.1; see also Drobny v. JP Morgan Chase Bank, NA, 929 F. Supp.2d 839, 849 (N.D. Ill. 2013) ("'JP Morgan Chase acquired * * * all loans and all loan commitments, of Washington Mutual * * * * [O]n September 25, 2008, JP Morgan Chase became the owner of the loans and loan commitments of Washington Mutual.'") (quoting Affidavit of the FDIC Receiver, Robert Schoppe).[7]

Pursuant to the Financial Institutions Reform, Recovery, and Enforcement Act of 1989, the Mortgage was assigned to Chase by operation of federal law, which specifically authorizes the FDIC to transfer assets of a failed financial institution "without . . . assignment." 12 U.S.C. § 1821(d)(2)(G)(i)(II); see also Demelo v. U.S. Bank Nat. Ass'n, 727 F.3d 117, 125 (1st Cir. 2013).  Under the supremacy clause, U.S. Const. art. VI, cl. 2, "a transfer of a mortgage, authorized by federal law, obviates the need for the specific written assignment that state law would otherwise require."  Demelo, 727 F.3d at 125.  If no assignment was required to effectuate the transfer of plaintiffs' mortgage to Chase, then it follows that no assignment was required to be recorded prior to the foreclosure sale of the Property.

Fourth, contrary to plaintiffs' contentions, Chase did comply with the requirements of Minn. Stat. § 580.05, which provides:

> When an attorney at law is employed to conduct such foreclosure, the authority of the attorney at law shall appear by power of attorney executed and acknowledged by the mortgagee or assignee of the mortgage in the same manner

---

[7]    The Court notes that this same affidavit was filed in another case pending in this District Court.   See Luzaich v. JP Morgan Chase Bank, N.A., Civ. No. 13-1869 (DWF/JSM), Declaration of Peter J. Schwingler, Ex. B [Docket No. 10-2].

as a conveyance, <u>and recorded prior to the sale</u> in the county where the foreclosure proceedings are had. If such attorney be employed on behalf of such mortgagee or assignee by an attorney in fact, the attorney's authority shall likewise be evidenced by recorded power.

Minn. Stat. § 580.05 (emphasis added).

On November 10, 2010, a Notice of Pendency and Power of Attorney to Foreclose was recorded authorizing Usset to foreclose on the Property by advertisement and to bid in for the Property at the foreclosure sale. <u>See</u> Complaint, Ex. 12. After postponement of the sale by agreement of plaintiffs, ultimately the foreclosure sale on the Property occurred on June 14, 2011. <u>Id.</u>, Ex. 13 (Sheriff Certificate and Record of Foreclosure Sale). As such, the power of attorney to foreclose the Mortgage and to bid for the Property was recorded prior to the sale of the Property at the sheriff's sale, as required by Minn. Stat. § 580.05. <u>See</u> <u>Smith v. Wells Fargo Bank, N.A.</u>, Civil No.13-0439 (SRN/TNL), 2013 WL 5720150, at *3 (D. Minn. Oct. 21, 2013) ("Plaintiff claims that no valid power of attorney existed when the law firm of Shapiro & Zielke, LLP, created the Notice of Sale and caused it to be published, because the Power of Attorney was executed after the date of the Notice of Sale and after the date of the first publication of the Notice of Sale. However, the relevant statute does not dictate when the power of attorney must be executed. Rather, it requires only that the power of attorney be recorded prior to the foreclosure sale. Here, the Power of Attorney was recorded on April 26, 2012, and the property was sold at a foreclosure sale on August 7, 2012. Thus, Defendant complied with the statutory requirements.").

Fifth, the Court concludes that the June 10, 2013 Quit Claim Deed from Chase to Fannie Mae is irrelevant to plaintiffs' quiet title claim since plaintiffs have not set forth a

viable claim as to the invalidity of the foreclosure of the Mortgage. Plaintiffs have not successfully challenged Chase's ability to foreclose the Mortgage, and therefore, plaintiffs have no interest in what remains of the Mortgage after the foreclosure.

Finally, as Fannie Mae argued, a quiet title action is a proceeding in equity and as such, a plaintiff who seeks to quiet title must come to court with clean hands. Haubrich v. U.S. Bank Nat'l Ass'n, Civ. No. 12-565 (DSD/TNL), 2012 WL 3612023, at *3 (D. Minn. Aug. 21, 2012), aff'd, 720 F.3d 979 (8th Cir. 2013); see also Yang Mee Thao-Xiong, 2013 WL 3788799, at *4 (plaintiff's unclean hands in defaulting on her mortgage prevented her from seeking equitable relief); Stilp v. HSBC Bank USA, N.A., Civil No. 12-3098 (ADM/JJK), 2013 WL 1175025, at *4 (D. Minn. March 20, 2013) ("Plaintiffs defaulted on their mortgage loan over four years ago. They seek to declare their mortgage invalid after defaulting; as such, they come to the present case with unclean hands.") (citation omitted).

Having defaulted on their Mortgage, plaintiffs come to Court with unclean hands and are precluded from pursuing a quiet title claim. Novak, 2012 WL 3638513, at *4 (citing Santee v. Travelers Ins. Co., 275 N.W. 366, 368 (Minn. 1937)) (finding that the plaintiffs had unclean hands because they were in default on their mortgage and, therefore, that they could not state a quiet title claim), aff'd, 518 F. App'x 498 (8th Cir. 2013).

For all of these reasons, plaintiffs' quiet title claim should be dismissed.

### B.   Slander of Title

To state a claim for slander of title, a plaintiff must allege facts that show: (1) there was a false statement concerning the real property owned by the plaintiff; (2) the

false statement was published to others; (3) the false statement was published maliciously; and (4) the publication of the false statement concerning title to the property caused the plaintiff pecuniary loss in the form of special damages. Paidar v. Hughes, 615 N.W.2d 276, 279-80 (Minn. 2000) (citation omitted). To plead malice, plaintiffs "must raise factual allegations sufficient to create a plausible claim that at least one of the [  ] parties acted with a reckless disregard for the truth, 'despite a high degree of awareness of probable falsity.'" Dunbar, 709 F.3d at 1258 (quoting Brickner v. One Land Dev. Co., 742 N.W.2d 706, 711 (Minn. Ct. App. 2007)); see also Quevli Farms, Inc. v. Union Sav. Bank & Trust Co., 178 Minn. 27, 226 N.W. 191, 192 (Minn. 1929) (concluding that to be a malicious statement, it must be a "groundless disparagement of the plaintiff's title or property . . . made without probable cause."). The filing of an instrument known to be inoperative is a false statement that, if done maliciously, constitutes slander of title. Kelly v. First State Bank of Rothsay, 177 N.W. 347, 347 (Minn. 1920).

Additionally, a slander of tile claim is subject to the heightened pleading standard of Fed. R. Civ. P. 9(b). See Murphy v. Aurora Loan Servs., LLC, 699 F.3d 1027, 1032 (8th Cir. 2012) (Rule 9(b) applies to slander of title claims); see also Ko, 2013 WL 3088728, at *4; Pope v. Fed Home Loan Mortgage Corp., Civ. No. 12-3094, 2013 WL 2251001, at *4 (D. Minn. May 22, 2013); Haubrich, 2012 WL 3612023, at *6.

Suffice it to say, having failed to plead any facts to support a slander of title claim, the claim fails to meet the Rule 9(b) standard. Plaintiffs alleged no facts from which this Court could even infer that Fannie Mae made a false statement or acted maliciously. Rather, plaintiffs only asserted that "defendant knew or should have

known" that unspecified documents were false, and that these documents were false because they were executed without legal authority as Fannie Mae, and not Chase, owned the Mortgage throughout the foreclosure proceedings. <u>See</u> Complaint, ¶¶ 61-63. These allegations standing alone, without any factual support, fail to state a slander of title claim. <u>See</u> <u>Ko</u>, 2013 WL 4052680, at *4 ("Ko alleges that Shapiro drafted and recorded documents that it knew were false because they were executed without the proper authority. But Ko fails to allege that Shapiro acted with malice. Because Ko fails to allege malice, he has not stated a claim for slander of title, and this claim will be dismissed.") (internal citation omitted); <u>Lara</u>, 2013 WL 3088728, at *3 (dismissing slander of title claim based on allegation that individuals signing documents lacked authority to do so and stating "[plaintiffs pleaded no plausible facts to support their allegations regarding signing authority."). In any event, as the Court has determined that Chase had the power to foreclose, and in fact, as there is no evidence that Fannie Mae made any statements at all regarding its interest in the Property prior to or at the foreclosure sale, it follows that no false statement by Fannie Mae was ever made.

Additionally, even assuming that documents recorded as to the Property are technically false, this does not amount to a cloud on the title of the Property where plaintiffs have clouded the title based on their default. <u>See</u> <u>Pope</u>, 2013 WL 2251001 at *4 ("An unauthorized assignment may be technically false, but it does not cloud the title to property on which the mortgagee has undisputedly defaulted. The only cloud on the title of the Popes' property is a cloud of their own making: they did not make the payments due under their mortgage and as a result, they lost their property through foreclosure.").

For all of these reasons, Fannie Mae's motion to dismiss plaintiffs' slander of title claim should be granted.

### C. Declaratory Judgment

A declaratory judgment is a remedy, not a cause of action.  See, e.g., Onvoy, Inc. v. ALLETE, Inc., 736 N.W.2d 611, 617-618 (Minn. 2007) (a declaratory judgment action may be maintained only where there is a justiciable controversy); Buck v. American Airlines, Inc., 476 F.3d 29, 33 n.3 (1st Cir. 2007) (noting that the Declaratory Judgment Act, 28 U.S.C. § 2201 "creates a remedy, not a cause of action").  In light of the Court's conclusion that plaintiffs' substantive claims must be dismissed under Rule 12(b)(6), "[they are] left with a remedy in search of right."  Scanlon v. Northwest Mortg., Inc., Civ. No. 11-3128 (MJD/TNL), 2012 WL 2885131, *7 (D. Minn. July 13, 2012); see also Lara, 2013 WL 3088728 at *3 (finding that where plaintiff had failed to state a substantive claim, the Amended Complaint also failed to state a claim for declaratory judgment) (citing Weavewood, Inc. v. S & P Home Invs., LLC, 821 N.W.2d 576, [579] (Minn. 2012) ("A declaratory judgment is a procedural device through which a party's existing legal rights may be vindicated so long as a justiciable controversy exists.")).

Plaintiffs' claim for declaratory judgment must be dismissed because there is no legal basis for affording the remedy.

## IV. RECOMMENDATION

For the reasons set forth above, it is recommended that:

1.      Defendant's Federal National Mortgage Association's Motion to Dismiss [Docket No. 15] be **GRANTED**.

2.    This matter be dismissed with prejudice.[8]


Dated: December 27, 2013

s/ *Janie S. Mayeron*
JANIE S. MAYERON
United States Magistrate Judge


## NOTICE

Under D. Minn. LR 72.2(b) any party may object to this Report and Recommendation by filing with the Clerk of Court, and serving all parties by **January 10, 2014**, a writing which specifically identifies those portions of this Report to which objections are made and the basis of those objections.  A party may respond to the objecting party's brief within ten days after service thereof.  All briefs filed under this Rules shall be limited to 3500 words.  A judge shall make a de novo determination of those portions to which objection is made.  This Report and Recommendation does not constitute an order or judgment of the District Court, and it is therefore not appealable directly to the Circuit Court of Appeals.

---

[8]    "Ordinarily dismissal of a [pleading] for failure to comply with Rule 8 should be with leave to amend."  Michaelis v. Neb. State Bar Ass'n., 717 F.2d 437, 438-39 (8th Cir. 1983).  Nonetheless, when a complaint is so deficient or defective that the court is convinced that its defects cannot be cured through re-pleading, dismissal with prejudice is appropriate.  That is the case here.  See McLean v. United States, 566 F.3d 391, 400 (4th Cir. 2009) ("to the extent . . . that a district court is truly unable to conceive of any set of facts under which a plaintiff would be entitled to relief, the district court would err in designating [a] dismissal to be without prejudice.  Courts, including this one, have held that when a complaint is incurable through amendment, dismissal is properly rendered with prejudice and without leave to amend."); McKesson HBOC, Inc. v. New York State Common Ret. Fund, Inc., 339 F.3d 1087, 1096 (9th Cir. 2003) (dismissal with prejudice is appropriate where "deficiencies in [plaintiff's] claims cannot be cured by amendment"); Cato v. United States, 70 F.3d 1103, 1106 (9th Cir. 1995) (a pro se litigant should be given chance to amend complaint unless it is "absolutely clear that the deficiencies of the complaint could not be cured by amendment."); Ikechi v. Verizon Wireless, Civ. No. 10-4554 (JNE/SER), 2011 WL 2118797, at *5, n. 6 (D. Minn. April 7, 2011) (recommending dismissal with prejudice of plaintiff's fraud claims because it was unlikely that plaintiff could cure the defective pleading on re-pleading), 2011 WL 2118791, *3 (D. Minn. May 25, 2011) (adopting the Report and Recommendation of Magistrate Judge Rau regarding dismissal of plaintiff's fraud claims for failure to satisfy the particularity requirement of Rule 9(b)).